## THE STATE *v.* LEONARD COLLINS HORNSBY.

To render a plea of a former acquittal a bar, it must be a legal acquittal, by judgment upon trial, for substantially the same offence, by a verdict of a petit jury.

New trials may be granted in capital cases, as well as in prosecutions for misdemeanors, where justice and humanity demand it.

The effect of a new trial in a criminal prosecution is merely to grant a re-hearing of the case before another jury, with as little prejudice to either party as if it had never been heard before. No advantage is to be taken of the former verdict on the one side, nor of the order awarding a new trial on the other.

Where on an indictment for murder, the jury find the prisoner guilty of manslaughter, and a new trial is awarded to the latter, the prosecuting attorney may enter a *nolle prosequi* as to the charge of murder, and prefer a new indictment for manslaughter, without thereby acquitting the prisoner of the last offence. But the verdict of manslaughter is a virtual acquittal of the charge of murder, for which the prisoner cannot be again tried.

A *nolle prosequi* amounts neither to an acquittal nor pardon. It is simply the discharge of the particular indictment as to which it is entered, and is no bar to a future indictment for the same offence.

At any time before a jury is empanelled, the prosecuting attorney may enter a *nolle prosequi*, without the consent of the court or of the accused; but where the jury has been charged with the trial of a case, this right cannot be exercised against

Case 2,
8r 583
48 131
48 1009
48 1019
49 1517
49 1523

8r(b)583
52 1308

8r 583
Case 2
113 881
114 415

8r 583
Case 2
f117 358

8r 583,
Case 2
120 668

The State v. Hornsby.

the will of the court, which will not consent to its exercise where the defence appears ample, or the motion not likely to promote the ends of justice.
The right of appeal arises in a criminal case only after verdict, judgment and sentence: Any appeal taken previously will be dismissed, on a motion to that effect.

APPEAL from the Criminal Court of the First District, *Canonge, J.*

*Preston,* Attorney General, for the State.

*Collens* and *Preaux,* for the appellants, cited 2 Hale, 181, 220, 243, 249, 250, 251, 294–6. 2 Hawk. ch. 35, ss. 8, 9, 10 ; ch. 36, ss. 1, 10, 14 ; ch. 47, s. 12, *n.* 13 East's Rep. 416. 6 Term Rep. 638. 1 Chitty, 654. Starkie's Crim. Plead. 397. 4 Barn. & Adolph. 275. 18 Johns. 187. 6 Serg. & Rawle, 577. 1 Devereux, 491. 1 Haywood, 241. 8 Wendell, 549. 1 McLean, 432.

*Soulé,* on the same side.

JOHNSON, J. On the 7th of March, 1844, the defendant was indicted for the crime of murder, and found guilty of manslaughter. His counsel moved in arrest of judgment and for a new trial, on various grounds, which were overruled by the judge of the criminal court, and an appeal was prosecuted to this court. On the hearing here, a new trial, for irregularities in the proceedings below, was ordered and the case remanded for that purpose. *Ante,* p. 554.

On the 21st of November, 1844, the attorney general preferred a new indictment against the accused for manslaughter, and on the same day, with leave of the court, on motion, a *nolle prosequi* was entered upon the indictment for murder. On the 16th of December, 1844, the accused having been brought to the bar for an arraignment on this new indictment, interposed the following plea, to wit :

" The accused, Leonard C. Hornsby, being arraigned on the indictment charging him with the manslaughter of Daniel H. Twogood, pleads *auterfoits acquit;* and also pleads, that he has heretofore, on a former indictment, been put in jeopardy of life and limb for the same offence herein charged, and that this prosecution is thereby barred and should be abated, agreeably to the principles of the constitution of the United States, and of the government and laws of Louisiana.

" And this defendant further shows, that on the 7th day of March, 1844, an indictment in legal form and valid in law, was filed against him in the court, charging the defendant with the murder of said Daniel H. Twogood ; that this defendant was arraigned thereon on the 12th day of March, A. D. 1844, and having pleaded ' not guilty,' was tried thereon, and at the termination of the said trial, on the 22d day of March, 1844, the jury

sworn in said case, returned a verdict as follows: ' Guilty of manslaughter, New Orleans, 22d March, 1844, Francis L. Crais, foreman,' upon which, sentence and judgment were passed upon this defendant, on the 20th day of June, 1844, condemning this defendant to five years imprisonment at hard labor, to pay a fine of fifty dollars and the costs of the prosecution ; that upon appeal from said judgment and sentence before the Court of Errors and Appeals in criminal matters, the said judgment and sentence were, on the 11th day of July, 1844, set aside, cancelled and annulled, and the case remanded for a new trial ; that, on the 21st day of November, 1844, a *nolle prosequi* was entered upon said indictment for murder, on motion of the attorney general, which motion was allowed by the court.   And this defendant for greater certainty, annexes hereunto, as a part of this plea and answer, a certified copy of the said previous plea and answer, and a certified copy of the said previous indictment for the murder of Daniel H. Twogood, in order that its identity with the present prosecution, may fully and clearly appear, and in order that the court may see with greater certainty that this defendant is actually charged with the same offence charged in said indictment for murder.

" That this defendant will show from the records of this court, and of the said Court of Appeals;

" 1st. That the proceedings above alleged, amount in law and equity, to an acquittal of the crime herein alleged.

" 2d. That said proceedings are a perpetual bar to the present prosecution."

To this plea the attorney general demurred, alleging for cause, that the facts set forth in said plea, are insufficient in point of law to substantiate said plea and bar the present prosecution ; on which he prayed the judgment of the court—that said plea of *auterfoits acquit* be overruled and rejected, and the defendant tried on the indictment found against him.

Subsequently the defendant filed the following additional pleas, to wit : " In this case the defendant, for greater certainty and without waiving any of the exceptions contained in his pleas to the indictment in this case, sets forth, that he relies upon the following points comprehended in said pleas :

" 1st. Upon the verdict rendered to the jury on the former indictment, and recited in this defendant's plea and answer.

" 2d. Upon the 5th article of the amendments to the constitution of the United States, which declares that ' no person shall be subject for the same offence, to be twice put in jeopardy of life or limb,' said article being of binding force upon the courts of this and the other States of the Union.

"3d. Upon the 33d section of the acts of the Territorial Legislature, approved May the 4th, 1805."

Under the mixed aspect of these pleas, the necessity is imposed on us, to consider what is no longer a novelty but a very plain matter, and that is the legal import of the term *auterfoits acquit*. It is a plea made by a defendant indicted for a crime or misdemeanor, that he has been formerly tried and acquitted of the same offence. *To be a bar* the *acquittal* must have been *by trial*, and by the *verdict of a jury*, on a valid indictment. 1 Bouvier, 109. To render the plea of a *former acquittal* a bar, it must be *a legal acquittal* by judgment upon. trial, by a verdict of a petit jury. 1 Chitty, 458.

These authorities prove clearly, that a *legal acquittal* by *judgment, upon trial*, by *verdict* of a petit jury, must be shown, to sustain the plea of *auterfoits acquit*, and bar the proceedings.

The argument for the accused did not appear directly to question the truth of this doctrine, nor was a technical defence of *auterfoits acquit* in so many words, insisted upon; but it *was* urged, that the new trial granted in the case of murder wherein a verdict for manslaughter had been rendered, and the subsequent quashing of the indictment for murder, amount in judgment of law, to an acquittal. In taking this ground, the opinion of Judge Story, in 2 Sumner's Rep. 37, seems chiefly to have been relied on. It is there asserted, that a new trial cannot be granted in a capital case, because it would operate an acquittal of the accused, upon the common law maxim and constitutional provision that, "no person shall be subject for the same offence to be twice put in jeopardy of life and limb," which is now well understood to mean no more than that a man shall not be tried twice for the same offence.

In England, there is no doubt, in case of treason or felony, that a new trial cannot be granted when the proceedings have been regular; but if the conviction appears to be unjust to the judge, he may respite the execution, to enable the defendant to apply for a pardon, but this court has decided, in consonance, as it thinks, with the great current of American decisions, that all judges who are empowered to hear and determine indictments for crime, are invested with a discretionary power to grant new trials in capital cases as well as in those of misdemeanor, where, upon a sufficient showing, touching the merits or irregularities in the proceedings, justice and humanity demand it.

In the case of *The State* v. *Hornsby, ante*, p. 544, we recognized this merciful principle, when, in awarding him a new trial, we decreed that, "in capital cases, upon a separation of the jury, misconduct and abuse will always be presumed." We cannot, therefore, in this instance, give to the opinion of Judge Story,

however eminent as a jurist he may be, the weight of authority. In the case in which it was delivered, it did not acquire the force of authority, since the other judge, (Davis,) differed in opinion with Judge Story on the point; and we are yet to be informed whether it has succeeded in making many converts any where. The learned reasoning of Judge Story led the prisoners on to execution upon the gallows, to prevent their lives from being twice put in jeopardy, thus torturing a humane constitutional provision in their favor, into one of hopeless and inevitable death, no matter how unjust and grievous the sentence of conviction. In the case of *The Commonwealth* v. *Green*, 17 Mass. Rep. 515, 533, Judge Parker said, "the court had authority to grant a new trial after conviction of a capital crime." In 1 Johnson's Cases, 104, *The People* v. *Townsend*, a new trial was granted, in a case of perjury, because the verdict of the jury was contrary to evidence. See also the same principle acknowledged in *The People* v. *McKay*, 18 Johnson's Rep. 21. Indeed we do not regard this question as at all open to controversy, and have given to it more consideration than it merited, and more, it may be, than was expected of us. We have, therefore, no doubt of our authority to grant, and of the defendant's right to demand, the new trial which was awarded him on the former appeal. Let us now inquire into the legal effect of that new trial, in view both of the rights of the accused and those of the State. What is a new trial? "It is a re-hearing of the case before another jury; but with as little prejudice to either party as if it had never been heard before. No advantage is to be taken of the former verdict on the one side, or the rule of court, for awarding such second trial on the other." Blackstone, 3d vol. p. 391. A new trial results then, in placing the case exactly in the position it occupied before there had been a trial, in relation to the objects for which it had been awarded, and, with this qualification, all proceedings are set aside, and the party stands as if he had never been tried; and when this court, on the former appeal, ordered, that "the judgment of the criminal court be set aside, cancelled and reversed," the defendant stood again before that court as he stood before the trial—unprejudiced and in the full possession of all his rights, just as they existed when he first answered to the indictment. But the new trial conferred on him no *new rights*.

It is not disputed that the new trial was awarded at the prayer of the defendant, and, as we think, in accordance with settled doctrine; yet it has been argued that, in seeking and obtaining the new trial, the defendant did not, by legal intendment, consent to be tried on any other than the first indictment, the quashing of which, under the circumstances, was, it is said, equivalent to an acquittal. Upon the maturest reflection, we think that no such

pretension can be legitimately set up by the defendant. He took the new trial with all its legal consequences and contingencies; and if the attorney general, anterior to the first trial or to the em-pannelling of a jury for the purpose of a trial, could have entered, as we doubt not he could, a *nolle prosequi* on the indictment which was then pending for murder, and institute another instantly for manslaughter, without thereby acquitting the accused by judgment of law, he certainly had an equal right to adopt that course after the new trial was awarded, at the time he did exercise it with the leave of the court. All former proceedings were set aside, and the party stood as if he had not been tried at all. It is true, the verdict of manslaughter was a virtual acquittal of the charge of murder, for which grade of homicide the accused could not have been again constitutionally put on his trial under the first indictment or a second; yet it would be a legal solecism to say he was acquitted of the manslaughter, when he was convicted of that offence by the finding of the jury, which was an insuperable barrier to a verdict for murder only, on a second trial— the new trial having been granted in reference to the fact whether the homicide was manslaughter or not. In other words, the new trial was granted as to the crime of which the accused was found guilty, the indictment affording only the form of bringing the crime before the court. The homicide was always the same in fact. It was pronounced manslaughter by the jury. The accused succeeded in setting that verdict aside, to be tried again for the same fact. It was the fact, and not the form of bringing it before the court, which the accused succeeded in having ordered to be tried again, and the fact is now brought before the court in a form most favorable to the accused. It is a rule of law, that if a man indicted for murder is found guilty of manslaughter, he cannot again be indicted for murder, if the first indictment were a good one; and if, in such a case, a new trial is awarded, it may be on the indictment for murder, because an indictment for murder includes an accusation of manslaughter. We can see, however, no legal reason, why, in a case like the present, the attorney general might not enter a *nolle prosequi* on the indictment for murder, on the trial of which, manslaughter was the verdict, and a new trial granted, and prefer one simultaneously for the manslaughter. It neither compromises, delays, nor takes away from the accused, any right or privilege, whilst it simplifies the prosecution.

These matters disposed of in this manner, we are to inquire into the effect of the *nolle prosequi*, and of the right of the attorney general to enter it in this case. The effect of a *nolle prosequi*, when obtained is to put the defendant without day; but it does not at all operate as an acquittal, for he may afterwards be re-indicted, and, even upon the same indictment, fresh process

may be awarded. 1 Chitty, 470, 480. A *nolle prosequi* neither amounts to an acquittal nor to a pardon, but is simply a discharge of a particular indictment upon which it is entered, and is no bar to a future indictment for the same offence. 2 Mass. 172. 7 Pick. 179.

A *nolle prosequi* is now held to be no bar to a future action for the same cause. 2 Bouvier, 103. To this point, these authorities we think ample. Now as to the right of the attorney general to enter a *nolle prosequi*, as to the indictment for murder, and to prefer the one for manslaughter. After much investigation in the case of *The State* v. *Brown*, decided by this court, *ante*, p. 566, we held that, " the attorney general may at any time before a defendant has been actually tried, on application to the court, have an indictment quashed, if the prosecution is in good faith, and not instituted from malicious motives, or for the purposes of oppression ; and that the presiding judge will take care to prevent abuse and oppression, by not permitting a capricious, arbitrary or malicious exercise of the power." Upon a view of all the authorities bearing upon this question, we are satisfied, that at all stages of a criminal prosecution before a jury is empannelled, the attorney general possesses an arbitrary control over his indictments, and that he may enter a *nolle prosequi* as to them, at pleasure, without the consent of the court or of the accused, and not run counter to the fifth article of the amendments to the constitution of the United States. But when the jury has been charged with the trial of a case, this right of the attorney general is suspended, or at least qualified, and cannot be exercised *against* the consent of the court, which will in no case grant it, if the defence appears ample, or if the motion appears not to be in good faith, and to promote the ends of justice. This right may be exercised, even after conviction, when it is clear that no judgment can be pronounced on the verdict, on account of defects in the indictment. But whether this power, even with the permission of the court, can be exerted, without working an acquittal of the accused, after the jury empannelled to try have received the charge of the court, and retired to consider of their verdict, it is unimportant here to inquire ; because, as has been said, the *nolle prosequi* in this case was entered at a time when the attorney general needed not even the consent of the court or the accused to justify it ; that is to say, before the accused had been put on his trial, after the granting of the new trial, which placed the case as to the fact of manslaughter precisely where it was before there had been any trial at all. We conclude, therefore, that the attorney general had a right, in this instance, to enter the *nolle prosequi* upon the indictment for murder, and bring one forward for manslaughter ; and that the action of the court and of the attorney general was in good faith and not unfavorable to any right of the accused.

who cannot, in consequence thereof, claim to have been acquitted in fact or in law.

No objection·was raised by the State to the right of the accused to bring this appeal from a preliminary decision or interlocutory decree of the criminal court, and we have considered the merits of the case as though such right existed ; but it is not, therefore, to be concluded that we mean to sanction such a practice. On the contrary, we do not think that an appeal would lie in the case, as the right accrues only after verdict and judgment and sentence ; and, if the attorney general had made a motion to dismiss the appeal, we should have felt bound to sustain it.

The judgment of the Criminal Court overruling the prisoner's. pleas in bar is affirmed, and it is ordered, that the case be remanded to be proceeded in according to law.