Dissenting Opinion.
Watkins, J.
This appeal was granted from a decree of the trial judge disallowing the defendant a change of venue, and the motion to dismiss is grounded upon the theory that a defendant is not entitled to an appeal until after verdict and sentence.
The theory of the appellant is that the decree of the judge refusing his application for a change of venue is of the nature of a final judgment disposing of the issue and preceding the trial, and the review of which concerns the acuused, but with which the jury has nothing whatever to do.
That, if he has no recourse by separate appeal, his redress is *1013 irretrievably lost, as it has become merged into the verdict and judgment, and must be thereafter treated only as an incident of the case.
Counsel for the State relies mainly upon the provisions of Revised Statutes, Sec. 1001, which are as follows, viz.:
“If final judgment has been rendered upon any indictment where the punishment of death, or imprisonment at hard labor may be inflicted * * * an appeal may be taken on behalf of the accused from such judgment, returnable to the Supreme Court, as in civil cases,” etc.
And from the terms of the statute be draws the inference that an appeal is not permitted to the defendant at any prior stage of the proceedings.
But it must be observed that the phraseology of the statute is stated somewhat hypothetically, thus: “ If final judgment has been rendered, an appeal may be taken.” Yet, if that inference be accepted as correct, the right of appeal would be restricted to the defendant, as the statute says “an appeal may be taken on behalf of the accused ” — making no mention of the State.
The appellate jurisdiction of this court is neither granted nor defined by statute, but is granted and defined by the Constitution; and it declares, in broad and comprehensive terms, that “the Supreme Oourt shall have appellate jurisdiction only, which jurisdiction shall extend to * * * criminal cases on questions of law alone, whenever the punishment of death or imprisonment at hard labor may be inflicted,” etc. Const., Art. 81.
Construing the provisions of the statute and the Constitution together as laws in pari materia, we are to consider and determine whether an appeal can be prosecuted from a decree of a trial judge on a question of law arising in a criminal ease antecedent to a judgment rendered upon an indictment.
It may be at once conceded — and it has been the uniform and consistent course of the decisions of this court for a great many years— that “i/final judgment has been rendered upon an indictment,” in a ease punishable with death or imprisonment at hard labor, no ap - peal lies, on behalf of the accused, from any question of law, separate and apart from themerits of the case; but the language of the Constitution is in striking contrast with the statute, in that the appellate jurisdiction of this court is expressly extended “to criminal cases on questions of law alone,” without any restriction in regard to final *1014 judgment having been therein rendered, or with regard to the State or the accused being entitled to exercise that right.
It appears to have escaped the attention of counsel for the State that the statute with reference to appeals in criminal cases received a most decided change by a legislative enactment in 1878; which enactment provides, “ that in all criminal cases in which appeals are allowable under the Oonstitution, the party desiring to appeal shall file his motion,” etc. Section 1 of Act 30 of 1878.
The final section repeals all former laws upon the same subject matter.
The distinguishing characteristics of this act are: (1) it particularly specifies all criminal cases in which appeals are allowable under the Constitution, without regard to final judgment having been rendered; (2) it confers the right of appeal upon the party desiring to appeal, without restriction as to the State or the accused.
This statute seems to have escaped observation by the court in State vs. Wilkins, 37 An. 92, the leading case cited by counsel for the State, as will be shown by the following extracts which we have selected from the brief, viz.:
“On general principles an appeal from an interlocutory order or judgment in criminal matters doesnotlie. It seemsnecessary to continue to repeat the announcement that our Code of Practice does not assume to regulate criminal pleading, and has nothing whatever to do with it. An appeal in criminal matters is regulated by the common law rules of practice, except when modified by our own statutes, and the common law practice in criminal trials does not know such a proceeding as an appeal from an order (or judgment, if you will) overruling a plea which does not determine the case. The appeal is from the sentence or final judgment. Our statute is, that if final judgment has been rendered an appeal may be taken (Revised Statute, Sec. 1001), and it is but a recognition of the universal rule that where the ruling of the lower court does not dispose finally of the ease, it can be'reviewed only on appeal from the judgment that does dispose finally of it. Wharton Cr. Pr. and Pl., Secs. 775-777.” (Our italics.)
It is evident that appeals in criminal cases have been recognized and controlled by the provisions of the organic law, ever since the adoption of the Oonstitution of 1845, Art. 63 of which is identical in terms with 81 of the present Oonstitution.
*1015 Prior to 1843, appeals were not permitted in criminal cases; and •during that year, the Legislature established the Court of Errors and Appeals, with appellate jurisdiction to review questions of law in criminal cases. But the Constitution of 1845 took its place. In State vs. Adam, 8 R. 571; State vs. Charlot, 8 R. 529; State vs. Fount, 2 An. 837, and State vs. Brown, 4 An. 505, these changes of the statute and constitutional law are treated of.
It is, therefore, clear that the provisions of the act for the Territorial Legislature of 1805, which adopted the precepts of the common law in reference to criminal proceedings, had nothing to do with appeals in criminal cases, which were not permitteduntil nearly forty years thereafter. State vs. Seiley, 41 An. 143.
We may consequently discard all common law authorities as having no application to the question before us.
That the authority of Act 30 of 1878 has been frequently recognized by this court since the date the Wilkins case was decided, as controlling the method of appeal, is attésted by the following cases, amongst others, viz.: State vs. Joseph, 38 An. 33; State vs. Cohn, 38 An. 42; State vs. Jenkins, 36 An. 865; State vs. Burns, 38 An. 363; State vs. Meddler, 38 An. 390; State vs. Furniss, 38 An. 484; State vs. Butler, 35 An. 392; State vs. Stephens, 38 An. 928; State vs. Estoup, 39 An. 906; State vs. Cloud, 40 An. 618; State vs. Lyon, 41 An. 952; State vs. Jolivette, 43 An. 509; State vs. Bevell, 47 An. 48.
It will be ascertained to be a fact, that in repeated decisions of this court, both prior and subsequent to the passage of the act of 1878, the right of appeal has been recognized in favor of both the State and the accused, on questions of law entirely independent of the final judgment on the merits relative to the guilt or innocence of the accused; and that it has been repeatedly recognized to exist subsequent to judgment, as well as antecedent to judgment upon an indictment.
Section 1001 of the Revised Statutes is the exact reproduction of Sec. 26 of Act 121 of 1855, when the Constitution of 1852 was in force; and the appellate jurisdiction of the court in criminal cases was practically the same as it is under the present Constitution.
It continued to' be the same under the Constitution of 1864, Art. 70; but in the Constitution of 1868, the language was so altered as toread: “whenever the punishment of death or imprisonment at *1016 hard labor * * * is actually imposed,.” Art. 74. Yet, there was no corresponding change made in the statute, notwithstanding this important restriction upon the right of convicted persons to appeal, as well as that recognized to exist in the State.
Keeping in view the general rules thus formulated, a review of the jurisprudence prior and subsequent to the passage of the act of 1878 will materially aid us in solving the question propounded in the motion of the State to dismiss the defendant’s appeal.
I.
We may take as the starting point State ex rel. Shelton vs. Judge, 16 An. 159, which was decided under the Constitution of 1864. Relators had been arrested and brought before a justice of the peace for preliminary examination; and having waived examination, they objected to the examination being proceeded with. Thereupon the prosecutor applied for a writ of mandamus, to compel the justice to proceed with the examination of the witnesses, in order to perpetuate their testimony; and the writ having been made mandatory, the respondent demanded an order of appeal, and same was refused by the District Judge. ,
Relators applied to the Supreme Court for a writ of mandamus to compel the District Judge to grant them an appeal, and indisposing of that question the court, speaking through Chief Justice Merrick, said:
“The Constitution gives this court appellate jurisdiction of questions of law, whenever the offence is punishable at hard labor. Constitution, Art. 62.. A question of law was then raised in the District Court in a case over which this court has appellate jurisdiction, and the question of law can not be raised by this court in any other manner than by a direct appeal from the decision on this collateral matter affecting the rights of the accused, for the decision on this branch is final” — and this court made the writ mandatory.
The provisions of the Constitutions of 1852 and 1864 are identical in this regard.
That interlocutory decrees, possessing the quality of finality, were, previous to that time, regarded as appealable, is intimated in several eases.
For instance, in State vs. Tucker, 7 An. 551, the court used this expression, viz.:
*1017 “ The record contains neither a final judgment nor interlocutory-decree upon which we are authorized to act.”
And in State vs. Bouchon, 20 An. 394 — decided since — the court said :
“ Yet there is not in the transcript of appeal either a final judgment signed by the judge, nor such interlocutory judgment as will work irreparable injury.''
In State vs. Cheevers, 7 An. 40, the right of the State to appeal from an interlocutory decree of the trial judge, in limine and before the empaneling of the jury, sustaining the defendant’s plea of autrefois acquit, was recognized; and thereon the case was examined and the judgment affirmed.
In State vs. Hood, 6 An. 179, the right of the State was recognized to appeal from an interlocutory judgment quashing an information.
Likewise in State vs. Hendry, 10 An. 207; State vs. Ellis, 12 An. 320 — and other cases.
But the jurisprudence on this question is distinctly summarized in State vs. Cason, 20 An. 48 — a case decided in 1878, the year in which the Constitution of that year was adopted — the appeal having been prosecuted by the State from an interlocutory judgment quashing an indictment.
The counsel for the accused filed a motion to dismiss, upon the ground that its right of appeal is limited to cases' “ where indictments have been quashed before trial, or held bad oh demurrer, and can not be extended to cases in which trial has been had and verdict rendered.”
But the court, speaking through Mr. Justice Ilsley, said:
“ The Constitution, in giving appellate jurisdiction to this tribuna* upon questions of law in certain criminal cases, does not confine our power to an examination of questions arising before or after verdict, nor does it limit the right of appeal to either party.
“ We can not therefore draw a distinction where the law makes none. Ubi lex non distinguit, nec nos distinguere debemus.,’>
That decision gives a clear and cogent interpretation of the constitutional grant of appellate jurisdiction to this court in criminal, cases, and there can be no misunderstanding of it.
But, when the terms of the Constitutions of 1845, 1852 and 1864 “ may be inflicted,” were so altered by those of the Constitution of 1868 as toread “is actually imposed,” the jurisprudence received *1018 a corresponding change, and, in the following decisions of this court, which were rendered thereunder, the right was denied either State or accused to appeal in any case where a final judgment had not been rendered. State vs. Redding, 21 An. 188; State vs. Fournet, 22 An. 564; State vs. Gay, 22 An. 460; State vs. Welsh, 23 An. 142; State vs. Brown, 27 An. 236; State vs. Banks, 28 An. 92; State vs. Cullom, 28 An. 49.
It was during this period that the statutes were revised and Sec. 26 of Act. 121 of 1855 was crystallized into Revised Statntes, Sec_ 1001.
But when, in 1879, the original terms employed in constitutions prior to that of 1868 were again incorporated into the organic law, the jurisprudence was readjusted so as to conform thereto; and this change is well stated in State ex rel. Gabriel vs. Judge, 33 An. 1227, same being a proceeding by mandamus to coerce the trial judge to grant the defendant an appeal from a jndgment sentencing him to pay a fine of twenty-five dollars, under conviction of larceny.
In that case this court, recognizing the right of appeal to be controlled by the Constitution notwithstanding the act of 1878 had been in the meantime adopted, used the following language, viz.:
“ Our present constitutional provision differs toto ccelo from that of 1868, the latter limiting the right of appeal to those cases in which the punishment of death, or imprisonment at hard labor * * * is actually imposed,” while the former extends “to those where, under the law governing them, they may be inflicted,” etc.
The principle announced in that case was affirmed in State vs. Guillory, 42 An. 581. State vs. Williams, 37 An. 200; State vs. Taylor, 34 An. 978.
And in keeping with that principle wé find, in State vs. Oliver, 38 An. 632, a striking application of it, and in the course of their opinion the court, speaking through Mr. Justice Fenner, said:
“The judgment appealed from sustained a motion in arrest of judgment on the ground of defect in the verdict, and remanded the prisoner to custody to await trial. The accused, contending that the legal effect of sustaining the motion in arrest, on the ground stated, was to terminate the case and entitle him to a discharge, and thus make a final judgment, prosecutes this appeal to correct an alleged error in remanding him to custody.
“He is entitled to have the question passed upon'.”
*1019 In that ease there had been a trial and verdict, but the trial judge had sustained the defendant’s motion in arrest; and by this means the verdict was vacated, no sentence pronounced and the accused was remanded to await trial, and in the meanwhile to remain in custody.
Favoring the liberty of the citizen, this court entertained and passed upon his appeal.
■ Another striking illustration is found in State vs. Williams, 38 An. 960, wherein the right of the State to appeal from an interlocutory decree of the trial judge, granting the accused a new trial ex proprio motu, was sustained, andón the trial the order was annulled and set aside.
But in the very recent case of State vs. Davis, No. 12,084 — which was decided on the 2d of March, 1896 — we find the doctrine of the Williams case extended, and the .aforesaid rule more fully exemplified.
In tha't case it appears that the defendant was indicted, tried and found guilty of embezzlement; and a new trial having been granted him upon his own motion, the State appealed.
Entertaining the appeal, this court, speaking through Mr. Justice Breaux, said:
“ Ordinarily no appeal lies in a criminal case from a motion granting a new trial-. To reverse an order granting a new trial it must be manifest that an error of law was committed in granting a new trial.
“We do not think that in this case there was an abuse of discretion.”
It is true, that after having examined and considered the question raised, and approved ofthe decision of the trial judge, the decree is “the appeal is therefore dismissed;” yet it is none the less a final judgment, that disposed of the only question at issue in the appeal.
In so deciding, this court followed, exactly, the precedent which was established in State vs. Hornsby, 8 Rob. 583, wherein the court entertained an appeal by the State from an interlocutory decree and decided it upon its merits, prior to final judgment on the indictment. This decree was rendered previous to the adoption of the Constitution of 1845, thus bringing the jurisprudence of the two eras together.
*1020 II.
In repeated decisions, this court has affirmed the right of the State to prosecute an appeal from an interlocutory judgment of the tria 1 judge quashing an indictment, under constitutions prior to that of 1868, of which the following will serve as illustrations, viz.: State vs. Hood, 6 An. 179; State vs. Hendry, 10 An. 207; State vs. Ellis, 12 An. 390; State vs. Ross, 14 An. 364; State vs. Clay, 12 An. 431.
Of those of this court under the Constitution of 1879 the following are illustrations, viz.: State vs. Humphries, 35 An. 966; State vs. Robinson, 37 An. 673; State vs. Laqué, 37 An. 854; State vs. Taylor, 34 An. 978; State vs. Brabson, 38 An. 144; State vs. Jefferson, 39 An. 331; State vs. Dubois, 39 An. 676.
The same rule has been applied to tbe right of the State to appea from an interlocutory decree of the trial judge, sustaining a motion in arrest of judgment. State vs. Morgan, 35 An. 1139.
III.
It has been repeatedly held that a surety upon the appearance bond of an accused person who has not been tried upon an indictment, and is at large, has the right to avail himself of the appellate jurisdiction in criminal cases, without regard to the amount involved— the theory being that the character of the case in which the bond is taken attracts its jurisdiction to the bond. State vs. Cassidy, 7 An. 276; State vs. Williams, 37 An. 200; State vs. Burns, 38 An. 363; State vs. Balize, 38 An. 452; State vs. Hendricks, 40 An. 719; State vs. Ansley, 13 An. 298; State vs. Desforges, 5 Rob. 253; State vs. Toups, 44 An. 896.

IV.

An interlocutory decree may or may not dispose of the question that is before the court and is decided. If it does finally and irrevocably dispose of the question, it is as much a final decree of the court as a final judgment on the merits of the case.
The essential difference between an interlocutory and a final judgment is, that the former disposes of some collateral issue outside of the principal issue, while the latter disposes of the merits of the controversy. In criminal matters there is this further distinction, that the judge tries and decides the interlocutory question, and the *1021 jury decides the merits of the case with regard to the guilt or inno - cence of the accused.
A fair illustration of the principle is found in State ex rel. Poché vs. Judge, 42 An. 317, wherein the respondent having refused to grant relator a supensive appeal from a decree overruling his plea of recusation, this court made a writ of mandamus peremptory, saying:
“ An interlocutory judgment is one which does not decide on the merits. It is either ancillary to, or executory of, the final and complete adjudication of the cause.
“ The matter at issue, on the plea of recusation,.in no way relates to the persons of the litigants, or to any subject involved in the controversy between them. * * *
* * * “Whether the plea is well or ill founded is a question which can in no manner influence the judgment on the merits of the litigation, or on any subject growing out of the differences of the parties touching same.”
A very similar question is raised here.
The defendant prays for the removal of the cause into a different parish for trial, because, in his opinion, he can not obtain a fair and impartial trial in the parish of Orleans; while in that case the object to be attained, and the effort was, to depose the judge on the ground that, by reason of his personal interest, he was disqualified to decide the merits of the case.
In each case, the question was one that could be tried but once; and having been decided, it would not recur again.
Indeed we might well adopt the language of the Chief Justice in that case when he says:
“ There is but one question raised, and it concerns the qualification of the judge. A judgment on that issue can not be interlocutory, for such a judgment would imply a final judgment in futuro. As the question raised, when once decided, is no more to recur, it follows that the judgment on it would be and is final judgment on that issue.”
V.
Applying the legal principles which ara outlined above, to the motion of the State to dismiss the defendant’s appeal, what is the conclusion at which this court must arrive?
*1022 In treating of defendant’s rights with reference to a change of venue, in State vs. Daniel, 31 An. 92, Mr. Justice De Blanc, speaking for the court, said:
' “ It is manifest that sucha motion is addressed, exclusively, to the judge, and that he alone can and must pass upon the sufficiency 'of the facts alleged' and testified to;” and then adverting to the fact that no proof accompanied the bill of exceptions further observed, that had that been done “ he would have presented a question of law resting on admitted facts, and that question we would have been bound to consider aud decide.
“We believe, as urged by defendant’s counsel, that in regard to such an application the discretion of the judge is not unlimited; that when prejudice does exist, when its existence is proven, the accused has an absolute right to a change of venue, and that from, an improper denial of that right he may appeal to this court.”
It is provided in the bill of rights that “in all criminal prosecutions the accused shall enjoy the right to a speedy public trial by an impartial jury;” but this privilege is coupled with the proviso “that the accused in every instance shall be tried in the parish where the offence shall have been committed, except in eases of change of venue.” Constitution of 1879, Art. 7.
The framers of the organic law, ex'findustria, added the qualification to the proviso, “except in cases of change of venue.”
Not only is this so, but they deemed it a matter of sufficient importance to incorporate therein this further provision, viz.:
“The Legislature shall provide by law for a change of venue in civil and criminal cases.” Article 158. Identically the same provision occurs in all previous constitutions. Constitution of 1845, Art. 115; Constitution of 1852, Art. 112; Constitution of 1864, Art. 115; Constitution of 1868, Art. 112. '
In pursuance of these constitutional behests the general assembly have, at different sessions, enacted such statutes, and altered and amended same, until we have now only the provisions of the Revised Statutes, and the more recent act of 1876; and when construed together the rights and duties of the State and the accused, in this regard, are practically upon the same footing. Act 95 of 1876; Revised Statutes, Secs. 1022, 1023.
In the Revised Statutes the rules formulated under the distinct heading “Change of Venue,” like that of “Recusation of the Judges *1023 in Oriminal Oases” are altogether distinct from “Mode of Procedure.”
Let us examine the character of the. proceedings.
The statute requires that when any person indicted shall desire a change of venue, he shall apply therefor to the judge in a sworn application in which he shall state, substantially, “that by reason of prejudice existing in the public mind he can not obtain an impartial trial in the parish wherein the indictment is peading.” R. S., Sec. 1022.
The direction of the statute is further, that such application “shall be accompanied with proof under oath, and the judge shall hear the parties and their witnesses;” and if, on such hearing and examination of the evidence adduced, he shall be of opinion that the party applying can not have a fair and impartial trial in the parish where the indictment is pending, the judge shall award the change of venue to the adjoining parish,” etc. R. S., Sec. 1023.
The language of the act of 1876, amending Sec. 1021 of the Revised Statutes is, “wherever if shall be established by legal and sufficient evidence that a fair and impartial trial can not be had in the parish where the case is pending,” the judge shall change the venue.
That the change of venue involves a question of jurisdiction as well as of constitutional right, there can be no question; and this fully appears from the opinion of this court in Brouillette vs. Judge, 45 An. 243, in which Justice Fenner, speaking for the court, said:
“ This statute so obviously contemplates a trial of the issue on evidence to be adduced, including the right to cross-examine witnesses for the State, and also, if so desired, to produce witnesses on their own behalf, that we are bound to conclude that the learned judge must have inadvertently overlooked its existence. Act 95 of 1876.
* * :¡t sf* * * * if*
“ Reference to See. 1023, Revised Statutes, regulating proceedings when the application for change of venue is made by defendants, shows the nature of the proceedings contemplated, clearly involving a contradictory hearing of the parties and their witnesses ” (pp. 45 and 46).
The court, in the exercise of its supervisory jurisdiction, entertained a writ of prohibition at the instance of the indicted defendants, and annulled the respondent’s order changing the venue of the *1024 prosecution against their wishes; and we made the writ peremptory upon the ground that the respondent exceeded the bounds of his jurisdiction in ordering a change of venue without such contradictory hearing and judgment based thereon.
The guarantee of the bill of rights is that “ the accused shall have' a speedy public trial by an impartial jury,” and if, upon examination and trial of that question, it be ascertained that this guarantee can not be made effectual in the parish where the crime is alleged to have been committed, its further guarantee is that he shall have a change of venue.
In the Williams case (38 An. .960) we entertained an appeal by the State from an order of the judge, granting the defendant a new trial ex proprio mote, because it involved a question of the verdict operating the bar of once in jeopardy under Art. 5 of the Constitution; it is equally as clear, and just as free from doubt, that the defendant’s appeal must be maintained, as, in his opinion, his constitutional guarantees of an impartial trial and change of venue have been denied.
For these reasons I dissent from the opinion expressed by the majority of the court.