Statement of the Case.
MONROE, C. J.
In December, 1913, the grand jury of Caldwell parish returned an indictment, charging the defendant with murder, said to have been committed in that parish in October preceding, and on January 23, 1914, there was a mistrial on that charge (the jury failing to agree upon the verdict). A second indictment, correcting some error in the first, was returned, and defendant was released on bond. Thereafter, on July 13th, the state moved for a change of venue to the parish of Winn, and the motion was sustained. The papers, as forwarded to Winn parish, contained what purported to be a copy of the minutes of the Caldwell district court, certified as of date of September 16th, and reading as follows:
“State of Louisiana v. D. D. Pool. No. 69.
“Charged with the Crime of Murder.
“Motion for change of venue, filed by state, taken up and tried, change of venue granted, transferring the case to the Fifth judicial district of Louisiana, parish of Winn, for trial.”
On December 3d the district attorney, by letter, called the attention of the clerk to what he conceived to be an omission from the entry thus quoted, and the clerk, conceding that there was such omission, made an interlineation in the minutes, and forwarded another copy, certified as of date December 10th, and reading (omitting the caption):
“The accused and Ms counsel being in open court, the accused was arraigned and pleaded not guilty. Motion for change of venue, filed by the state, taken up, tried, and change of venue granted to the Fifth judicial district court, parish of Winn, for trial.”
On February 15, 1915, defendant was arraigned, over his objection, in the district court of Winn parish, and pleaded not guilty, and the case was set for trial for February 23d, when he moved that it be remanded to Caldwell parish, excepted to the jurisdiction of the district court for Winn parish, objected to the filing of the copy of the minutes of the Caldwell court, .certified as of date December 10th, and moved that the state be required to elect whether it would proceed thereon or on the minutes as certified on September 16th; and, the court having ruled against him, he gave notice of his intention so to do, and applied to this court for writs of certiorari, prohibition, and mandamus, with the result that a rule nisi was issued *231 from this court, and the proceedings stayed, though eventually (on March 22d) the application was dismissed and the applicant relegated to the remedy by appeal from the judgment finally to he rendered. State v. Pool, In re Pool, Applying, etc., 136 La. 1030, 68 South. 115. The district attorney then ruled the defendant to show cause, in the Caldwell court, why the minutes of that court should not be corrected so as to show his arraignment, and after a full hearing of the parties, and much testimony, the court, on April 17th, gave judgment making the rule absolute, from which judgment the defendant was allowed an appeal, which he' lodged in this court, where it is still pending, having been permitted to go on the delay docket. In the meanwhile the district attorney ruled defendant to show cause, in the district court of Winn parish, why a certified copy of the minutes of the Caldwell court, as thus corrected, should not be received in evidence, whereupon the defendant again applied to this court for a writ of prohibition, to prohibit the district court for Winn parish from giving effect (pending the appeal therefrom) to the judgment of the Caldwell court ordering the correction of the minutes, and the application was denied (on June 25th), with the indorsement, on the petition:
“This matter may be reviewed, in the event of an appeal bn the merits.” State v. Pool, In re Pool, No. 21,483.
The rule was then made absolute, and defendant was allowed the appeal that we are now considering.
Opinion.
[1, 2] The effect of a judgment on a motion to change venue is, at most, merely dilatory, since if the motion be denied the trial proceeds in the court of original jurisdiction, and if it be granted the case is transferred to another court, to be there proceeded with, and in neither event is the case finally disposed of, or the defendant entitled to his discharge. The judgment being, then, interlocutory, no appeal lies therefrom, save as included in the appeal from the final judgment in the case. Ex parte Mitchell, 1 La. Ann. 413; State v. May, 9 La. Ann. 69; State v. Pratt, 9 La. Ann. 157; State ex rel. Cook v. Keeper, etc., 15 La. Ann. 347; State v. Johnson, 36 La. Ann. 306; State v. Wilkins, 37 La. Ann. 62; State v. Hart, 48 La. Ann. 1008, 20 South. 186; State v. Foley, 114 La. 415, 38 South. 402; State v. Carter, 120 La. 96, 44 South. 997.
The Constitution of 1812 conferred no criminal jurisdiction on the Supreme Court, and the General Assembly found it necessary to create a “Court of Error and Appeal in Criminal Cases.” In State v. Hornsby, 8 Rob. 583, 41 Am. Dec. 314, arising under that Constitution, and decided by that court, defendant was charged with murder and convicted of manslaughter, which conviction was set aside by the appellate court, and the case was remanded for a new trial. The Attorney General then entered a nolle prosequi as to the charge of murder, and preferred a new charge of manslaughter, whereupon defendant pleaded autrefois acquit and “former jeopardy,” and was allowed an appeal from a judgment overruling those pleas. The appellate court entertained the appeal, but affirmed the judgment appealed from. In concluding its opinion, however, it said:
“No objection was raised by the state to the right of the accused to bring this appeal from a preliminary decision or interlocutory decree of the criminal court, and we have considered * * * the case as though such rights existed ; but it is not therefore to be concluded that we mean to sanction such a ■ practice. On the contrary, we do not think that an appeal would lie in the case, as the right accrues only after verdict and judgment and sentence; and if the Attorney General had made a motion to dismiss the appeal we should have felt bound to sustain it.”
The act (No. 93 of 1843, § 5) by which the court thus referred to was created vested it with “jurisdiction of all questions of law arising in the progress of any prosecution for *233 violation of any penal law of the state, where the punishment may [might] he death or imprisonment at hard labor”; and there was no other statute which purported to limit the jurisdiction so conferred to appeals from final judgments. By the Constitution of 1845 (article 63) the Supreme Court was vested with jurisdiction, “in criminal cases, on questions of law alone, whenever the punishment of death or imprisonment at hard labor may [might] be inflicted and when a fine exceeding three hundred dollars is [was] actually imposed,” and a similar provision has been incorporated in the other Constitutions' since adopted, save that of 1868; the language of the present Constitution upon that subject reading:
“And to criminal cases, on questions of law alone, whenever the punishment of death or imprisonment at hard labor may be inflicted, _ or a fine exceeding three hundred dollars, or imprisonment [meaning without hard labor] exceeding six months is actually imposed.” Article 85, Constitutions of 1898 and of 1913.
[3, 4] The Constitution of 1868 conferred jurisdiction “in criminal cases, on questions of law alone, whenever the punishment of death or imprisonment at hard labor, or a fine exceeding three hundred dollars is [was] actually imposed”; and in the case of State v. Brown, 27 La. Ann. 236, arising under that Constitution, it appearing that defendant had been tried for murder, convicted of manslaughter, and had then been granted a new trial, after which, a change of venue had been ordered, and that he had pleaded autrefois acquit in the court ad quern, and that the plea had been sustained, it was held by this court that the state had ho right of appeal, and its appeal was dismissed. Considering article 80 of the Constitution of 1879, in connection with similar articles in the Constitutions of 1845, 1852, and 1864, it was said by this court, in State v. Hart, 48 La. Ann. 1010, 20 South. 186:
“It is manifest, we think, that the articles do not deal at all with the stage of the suit when the appeal is to be taken. That was left to be determined on general principles or by statute, and when our present Constitution [of 1879] came into existence our jurisprudence and our statute both fixed the right of appeal of the accused as arising only on sentence. We can find nothing in the organic law to sustain the contention that the appeal from the interlocutory judgment [being, in the case then before the court, a judgment denying to the defendant a change of venue] is given the accused by the Constitution. We turn to our statute on the subject, which has been in existence and under judicial notice for more than 40 years, now section 1031 [should be 1001] of the Bevised Statutes. It provides: ‘If final judgment has been rendered on any indictment where the punishment of death or hard labor may be inflicted, an appeal may be taken to the Supreme Court.’ The statute follows the article of the Constitution as to the cases appealable, and supplies what the Constitution leaves untouched, the time for the appeal.”
The slight error in the quotation from the statute in no manner affects the applicability of the comment which the court makes upon it, and it will be readily observed that it gives the right of appeal only in cases where final judgments have been rendered, but does not limit the right to cases in which sentences have been imposed. Hence a judgment quashing an indictment is subject to appeal. State v. Ellis, 12 La. Ann. 390. On the other hand, the article of the Constitution, whether considered in connection with the statute or otherwise, no more grants the right of appeal from an interlocutory judgment, in a criminal case, than does the same article (in the present Constitution) grant such right, in a civil case, in declaring that:
“The Supreme Court * * * shall have appellate jurisdiction only, * * ® where the matter in dispute, or the fund to be distributed, * * ® shall exceed $2,000, exclusive of interest.”
For, if it did, then an appeal would lie from every ruling made by a judge of first instance in the course of a trial, and, whether in a criminal or civil case, the trial could be made interminable. In civil cases, the Code of Practice supplements the article of the Constitution, by declaring that (article 566):
*235 “One may likewise appeal from all interlocutory judgments, when such judgments may cause him irreparable injury.”
But there is no such provision in regard to appeals in criminal cases, and in State v. Wilkins, 37 La. Ann. 62, Mr. Justice Manning, speaking for this court, said:
“On general principles an appeal from an interlocutory order or judgment in criminal matters does not lie. It seems necessary to continue the announcement that our Code of Practice does not assume to regulate criminal pleading and has nothing whatever to do with it. An appeal in criminal matters is regulated by the common-law rules of practice, except when modified by our own statutes, and the common-law practice in criminal trials does not know such a proceeding as an appeal from an order (or judgment, if you will) overruling a plea which does not determine the case. The appeal' is from the sentence or final judgment. Our statute is that if final judgment has been rendered an appeal may be taken (Rev. Stat. § 1001), and is but a recognition of the universal rule that, where the ruling of the lower court does not dispose finally of the case, it can be reviewed only on appeal from the judgment that does finally dispose of it. Wharton’s Or.' Pr. & Pi. §§ 775-777. Public policy no doubt caused the original establishment of the rule and equally demands its preservation. To permit appeals from orders overruling motions, pleas, etc., in the progress of a criminal trial, would so delay and hamper the administration of that branch of the law as to paralyze it virtually and deprive criminal statutes of more than half their terrors. The deterrent effect or influence of a denunciation of punishment as consequent upon the commission of a criminal act is augmented a hundredfold by its speedy infliction.”
In the latest published volume of Corpus Juris (a work which appears to exhaust human research in stating the law upon every conceivable subject, as applied, at this time, to the affairs of men, by the courts of this country and England), it is said:
“Sec. 294. * * * It is generally held that an order granting or refusing a change of venue is not appealable, or the subject of a writ of error, either because it is not a final judgment and is not within the statutory provision allowing appeals from certain interlocutory orders, or because it is discretionary; and, in some jurisdictions, it is expressly declared by statute to be unappealable.” 3 C. J. “Appeal & Error,” p. 473.
In the case of Brouillette et al. v. Judge, 45 La. Ann. 243, 12 South. 134, this court thought proper to issue a writ of prohibition against further proceedings in a criminal case in which the trial judge, out of term, without notice to defendant, over the objection of his counsel, and without hearing evidence, granted a change of venue. The case involved an exercise of the supervisory jurisdiction of this court, which is not usually exercised where there is an adequate remedy by appeal, and in assigning reasons for the issuance of the writ the court stated that whether the cases could be appealed or not depended upon the sentences that might eventually be pronounced, and further as follows, to wit:
“While we abstain from laying down any rule authorizing appeals to our supervisory jurisdiction in all cases of this kind, and might, perhaps, consider it better in . ordinary cases to await the conclusion of the trial and sentence before resorting to our powers of supervision in case the sentence should prove unappealable, we think that, under the peculiar facts of this case, where the issue is as to the * * * change of venue, where relators are forced to meet a trial in a parish other than that of their domicile, and where the state is exposed to the * * * expense of a trial which will prove fruitless, the interest of justice will be promoted by an immediate determination of the question presented, in order that irregular proceedings may be corrected and legal ones substituted therefor.”
We do not prejudge the issue involved in the case now under consideration by saying that it appears, from the admissions of record, that the motion for change of venue was made in open court, in presence of defendant and his counsel, and that defendant’s counsel gave the court to understand that they had no opposition to make to the granting of the change. Beyond that, however, we are dealing with a question involving our appellate, and not our supervisory, jurisdiction, and the case cited has no present application, save in so far as it assumes that there could be no remedy by appeal, except upon the conclusion of the trial by reason of a final judgment.
Another question, suggested by the opinion *237 in State v. Hornsby, supra, and elsewhere referred to, is, as to the propriety of dismissing an appeal in a case such as this, when no motion to that effect has been made. If, however, it be true, as we hold it to be, that no right of appeal is granted in such case, it would be difficult to find a basis upon which to rest the proposition that this, or any other, court is vested with jurisdiction to entertain such appeal. The appellate jurisdiction of this court extends only to such cases as the law declares may be appealed to it, and this case is not in that category.
It is therefore adjudged and decreed that the appeal herein be dismissed.